361 P.2d 516

Maurice Charles CHARVOZ, Administrator of the Estate of Maurice Bruce Charvoz, Deceased, Plaintiff and Appellant,

v.

Wendell L. COTTRELL, Defendant and Respondent.

No. 9334.

Supreme Court of Utah.

May 5, 1961.

Pugsley, Hayes, Rampton & Watkiss, Salt Lake City, for appellant.

Lawrence L. Summerhays, Salt Lake City, for respondent.

CALLISTER, Justice.

Plaintiff, administrator of the estate of Maurice Bruce Charvoz, brought this action to recover damages for the alleged wrongful death of decedent. The jury returned a verdict of no cause of action and the lower court denied plaintiff's motion for a new trial. Upon this appeal, plaintiff contends that the trial court erred in two particulars: (1) refusal to give to the jury a requested instruction that the defendant was negligent as a matter of law and (2) refusal to submit a requested instruction upon the issue of last clear chance. A consideration of these assignments of error necessitates a review of the facts.

Maurice Bruce Charvoz was struck and killed by an automobile owned and operated by the defendant. The accident oc-

curred at approximately 7:00 p. m. on the evening of October 26, 1959, at the intersection of 17th South and 19th East Streets in Salt Lake City. It was dark at the time, but the weather was clear and the road dry.

Seventeenth South Street, in this particular area, is a through street running east and west. It is a blacktop road, 37 feet 2 inches wide, with a painted traffic division line 20 feet 8 inches from the north curb and 16 feet 6 inches from the south curb. There is a well-marked pedestrian lane, eight feet wide, running north and south across 17th South on the west side of its intersection with 19th East. Stop signs are situated on the northwest and southeast corners of the intersection, facing the north and south bound traffic on 19th East.

At the time of the accident the defendant was driving the automobile east on 17th South and the deceased was walking south across said street in the pedestrian lane parallelling the west side of 19th East. The intersection was dimly illuminated by a street light on the southwest corner of the intersection. An automobile, with its head lamps on, had stopped, facing south, at the stop sign on the northwest corner and was waiting for defendant to pass through the intersection. The deceased was attired in dark clothing and walking at a normal gait with his head down. He was struck by the left front of the automobile at a point in the crosswalk approximately 6 feet south of the dividing line.

As to his first assignment of error, plaintiff concedes that the requested instruction that defendant was negligent as a matter of law was properly refused if the evidence as to defendant's negligence was in conflict. He contends, however, that the evidence is undisputed that the defendant was negligent in failing to keep a proper lookout and in failing to yield the right of way to the decedent.

Certainly, if there is a conflict in the evidence, the question of negligence is not one of law, but one of fact to be determined by the jury. However, even if the facts are undisputed, if fair-minded men can honestly draw different conclusions from them, the issue of negligence should be settled by a jury. In other words, negligence is a question for the jury unless all reasonable men must draw the same conclusion from the facts as they are shown.[1]

Defendant testified that he was traveling at a speed of approximately 30 miles per hour as he approached the intersection; that the headlights of his auto-

1. Linden v. Anchor Min. Co., 20 Utah 134, 58 P. 355; Best v. Huber, 3 Utah 2d 177, 281 P.2d 208.

mobile were on low beam; and that he did not see the deceased until he was about 60–65 feet from the point of impact. He immediately applied the brakes, but was unable to stop the car in time to avoid the collision. Plaintiff reasons that the defendant could and should have observed the defendant at a distance of at least 100 feet[2] from the crosswalk, which would have been a sufficient distance in which to stop the automobile and avoid striking the deceased; thus, defendant was negligent in failing to keep a proper lookout. This reasoning, however, overlooks certain other pertinent facts. It was dark at the time of the accident; the street had a blacktop surface; the intersection was only dimly illuminated; the backdrop, as seen from defendant's automobile, was a dark vacant lot on the northeast corner of the intersection; there was a car stopped on the north side of the intersection with its lights burning; and the decedent was wearing dark clothing.[3] Therefore, although the evidence is undisputed that the defendant could have stopped his car in time to avoid the accident had he seen the deceased at a distance of 100 feet, the circumstances are such as to create a doubt in the minds of reasonable men as to defendant's ability to observe the decedent at that distance and hence the issue of failure to keep a proper lookout was for the jury.

The defendant testified that when he first saw the decedent the latter was in the crosswalk approaching the dividing line of 17th South. He immediately applied his brakes, but could not stop in time to avoid hitting the deceased. He also testified that the decedent, after being first observed, walked some six feet or more across the dividing line and into the defendant's lane of traffic. Plaintiff contends that deceased had the legal right of way[4] and,

2. 41–6–134(b), U.C.A.1953, provides that headlights of an automobile, when on low beam, should be so aimed and of sufficient intensity to reveal persons and vehicles at a distance of at least 100 feet ahead.

3. See 2A Blashfield, Cyclopedia of Automobile Law & Pr., p. 155: "That a motorist equipped with statutory headlights does not observe a pedestrian in dark clothing walking in the road ahead of him until the moment before striking him is not necessarily conclusive of the negligence of the motorist; the question of his negligence under the particular circumstances usually being one of fact."

4. 41–6–78(a), U.C.A.1953: "When traffic-control signals are not in place or not in operation the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield."

therefore, defendant was negligent as a matter of law. It is well settled that statutes or ordinances giving pedestrians the right of way at street crossings create a preferential but not an absolute right in their favor.[5] Before the duty of a driver to yield the right of way arises he must be in a situation whereby he is either aware of the presence of a pedestrian within the crosswalk or should have, in the exercise of reasonable care, become aware of the pedestrian's presence in time to yield the right of way. In Coombs v. Perry,[6] this court stated:

> " * * * It is of course recognized that the right-of-way rule would not apply if, when the favored one (plaintiff) approached the crossing point, the disfavored one (defendant) was so close that in due care he could not, or should not reasonably be expected to give way."

■ Under the facts and circumstances in this case, the question of defendant's failure to yield the right of way was for the jury, and the lower court properly refused to give the requested instruction that the defendant was negligent as a matter of law.

The plaintiff's second ground for appeal is that the trial court erred in failing to submit to the jury a requested instruction on the theory of last clear chance. Plaintiff contends that the decedent was inattentive and that the defendant could have avoided the accident by either sounding the horn of the automobile or swerving to the right. He argues that this case falls squarely within the provisions of Section 480 of the Restatement of Torts [7] which has been adopted by this court.[8]

■ According to defendant's uncontradicted testimony he was traveling at a speed of approximately 30 miles per hour and first *knew* of decedent's situation when he was 60–65 feet away. He did not sound the horn or swerve to the right, but immediately applied his brakes. The automobile, by mathematical calculation, took less than two seconds to cover the distance between the point where defendant first saw decedent and the point of impact. It is *possible* that the decedent could have extricated himself from his peril if warned by

---

5. 96 A.L.R. 786.
6. 2 Utah 2d 381, 275 P.2d 680, 684.
7. "A plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if the defendant (a) knew of the plaintiff's situation, and (b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and (c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."
8. Compton v. Ogden Union Ry. & Depot Co., 120 Utah 453, 235 P.2d 515.

the sound of a horn, and it is *possible* that the defendant could have avoided the accident had he swerved to the right. However, the doctrine of last clear chance contemplates a last *clear* chance, not a last *possible* chance.[9] The doctrine implies thought, appreciation, mental direction and the lapse of sufficient time to effectually act upon the impulse to save another from injury.

In a case involving an automobile-pedestrian accident, this court stated:[10]

"The last clear chance doctrine is inapplicable in the present instance. In order for the * * * last clear chance to be properly submitted to a jury the evidence must be such as would in all probability reasonably support a finding that there was a fair and clear opportunity, in the exercise of reasonable care, to avoid the injury. It would not be sufficient that it appear from hindsight that by some possible measure the defendant by the 'skin of his teeth' could have avoided the injury."

It was not error to refuse to submit to the jury the instruction on last clear chance.

Affirmed. Costs to respondent.

WADE, C. J., and HENRIOD, McDONOUGH and CROCKETT, JJ., concur.

9. Fox v. Taylor, 10 Utah 2d 174, 350 P.2d 154.

10. Cox v. Thompson, 123 Utah 81, 254 P. 2d 1047, 1052.